

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| NORTHFIELD INSURANCE COMPANY | * |
| *Plaintiff* | * |
| VERSUS | * CASE NO.: 6:09-cv-1560-ORL-28GJK |
| NORTH AMERICAN CATASTROPHE SERVICES, INC. | * |
| *Defendant.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT FOR DECLARATORY JUDGMENT**
**BY NORTHFIELD INSURANCE COMPANY**

**NOW INTO COURT**, comes Northfield Insurance Company ("Northfield") and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, respectfully represents:

1.

**NATURE OF THE ACTION**

This is an insurance coverage action that seeks declaratory relief under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Specifically, Northfield seeks a declaration that it is not obliged to defend or indemnify Defendant, North American Catastrophe Services, Inc. ("NACS"), against certain lawsuits because the allegations are excluded from coverage by the Total Pollution exclusions and/or the Punitive or Exemplary Damages exclusions contained in the Policies (defined *infra*).

1

## Parties

**2.**

Plaintiff, Northfield Insurance Company, is incorporated in the State of Iowa and has its principal place of business in St. Paul Minnesota.

**3.**

Defendant North American Catastrophe Services, Inc. is a corporation organized under the laws of the State of Florida, with its principal place of business at 864-B Washburn Road, Melbourne, Florida, 32934. Upon information and belief, North American Catastrophe Services, Inc., is not licensed to do business in the State of Louisiana.

## Jurisdiction and Venue

**4.**

This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (a)(1) because the parties are of diverse citizenship and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**5.**

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c).

**6.**

A justifiable case and controversy exists regarding Northfield's duties, if any, to defend and indemnify NACS under the Policies with respect to the claims asserted in the Underlying Lawsuits, defined *infra*.

## The Underlying Lawsuits

**7.**

NACS has been named as a defendant in those certain matters pending in the United States District Court for the Eastern District of Louisiana, styled as *Aldridge, et al., v. Gulf Stream Coach, Inc., et al.*, No. 07-9228 ("*Aldrige* Lawsuit") and *Montrell Sinegar, et al., v. Forest River, Inc., et al.*, No. 09-2926 ("*Sinegar* Lawsuit"). The *Aldridge* Lawsuit and *Sinegar* Lawsuit are sometimes collectively referred to herein as the "Underlying Lawsuits."

**8.**

Plaintiffs in the *Aldridge* Lawsuit allegedly occupied or occupy certain temporary housing units furnished by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita in August and September, 2005, respectively. *See, Aldridge* Lawsuit, Original Complaint, ¶¶ I and II. (attached as Ex. A). The *Aldridge* plaintiffs allege that they suffered from headaches, nose bleeds, burning eyes, respiratory problems and other injuries resulting from exposure to elevated formaldehyde in temporary housing units furnished by FEMA. *Id.* at ¶¶ I and IV. According to the *Aldridge* plaintiffs, NACS identified, selected and procured the temporary housing units for FEMA, but failed to consult with manufacturers about the use of the temporary housing units for extended occupancy or to research health concerns related to formaldehyde exposure to occupants of the temporary housing units. *See, Aldridge* Lawsuit, First Supplemental and Amending Complaint, ¶¶ 10-11 and 65-74 (attached as Ex. B). Specifically, the *Aldridge* plaintiffs allege that NACS "contributed to the adverse health impacts upon the residents of the temporary housing units by selecting units unfit for extended occupancy." *Id.* at ¶ 74. The *Aldridge* Plaintiffs seek, among other things, the removal of all formaldehyde materials from the temporary housing units, testing of formaldehyde levels and

emissions in the temporary housing units, medical monitoring, actual damages, and punitive damages. *Aldridge* Lawsuit, Original Complaint, Ex. A, at Prayer.

9.

Plaintiffs in the *Sinegar* Lawsuit allegedly reside or live in certain temporary housing units furnished by FEMA after Hurricane Katrina in August, 2005. *See, Sinegar* Lawsuit, Complaint for Damages, ¶ 15 (attached as Ex. C). According to the *Sinegar* plaintiffs, NACS identified, selected and procured the temporary housing units for FEMA, but failed to consult with manufacturers about the use of the temporary housing units for extended occupancy or to research health concerns related to formaldehyde exposure to occupants of the temporary housing units. *Id.* at ¶¶ 33-34. As a result, the *Sinegar* plaintiffs allege that NACS "created and contributed to a situation where hundreds of thousands of people, including Plaintiffs, displaced by hurricanes Katrina and Rita were exposed to elevated and hazardous levels of formaldehyde." *Id.* at ¶¶ 59 and 112-121. The *Sinegar* plaintiffs seek damages for past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries. *Id.* at ¶ 122 and Prayer for Relief.

### The Policies

10.

Northfield issued those certain comprehensive general liability policies of insurance bearing policy numbers CP494600 for the policy period from August 25, 2004 through August 25, 2005 and CP494600-1 for the policy period from August 25, 2005 through August 25, 2006, which provide coverage to North American Catastrophe Services consistent with all terms,

limitations, conditions and exclusions therein (collectively, "Policies").

**11.**

Each of the Policies was negotiated, brokered, and delivered to NACS in the State of Florida.

**12.**

Each of the Policies contains Combination Endorsement A, Form S267-CG (3/04), which modifies insurance under the Commercial General Liability Coverage Part to provide as follows:

> **Amendment of Insuring Agreement—Known Injury or Damage**
>
> Insuring Agreement 1., under SECTION I, COVERAGE A of the COMMERCIAL GENERAL LIABILTY COVERAGE FORM is replaced by the following:
>
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The " bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>       (2) The "bodily injury or "property damage" occurs during the policy period; and
>       (3) Prior to the policy period, no one knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If anyone knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been know prior to the policy period.
>    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by anyone, includes any continuation, change or

5

    resumption of that "bodily injury" or "property damage" after the end of the policy period.

  d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when anyone:

    (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

## 13.

The Combination A Endorsement, Form S267-CG (3/04) in each of the Policies contains a Total Pollution Exclusion With A Building Heating Equipment Exception and Hostile Fire Exception that provides in relevant part:

  This insurance does not apply to:
  1. "Bodily injury" or "property damage," which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

  This exclusion does not apply to:
  a. "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to you and caused by smoke, fumes, vapor or soot from equipment used to heat that building;
  b. "Bodily injury" or "property damage" arising out [of] heat, smoke or fumes from a "hostile fire"....

  2. Any loss, cost or expense arising out of any:
    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a government authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

**14.**

Combination Endorsement A, Form S267-CG (3/04) defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals and waste. Waste also includes materials to be recycled, reconditioned, or reclaimed."

**15.**

Within the meaning of the Policies, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

**16.**

The Combination Endorsement A, Form S267-CG (3/04) excludes coverage for punitive or exemplary damages, fines, penalties or multiplied damages:

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**

This insurance does not apply to punitive or exemplary damages, fines, penalties or multiplied damages.

**FIRST CLAIM FOR DECLARATORY RELIEF**
**(The Pollution Exclusion Precludes Coverage)**

**17.**

Paragraphs 1 through 16 of this Complaint are hereby incorporated and made Paragraphs 1 through 16 of this First Claim for Declaratory Relief.

**18.**

The insuring agreement set forth in paragraph 12 requires Northfield to defend and indemnify NACS only if the insurance applies.

**19.**

Plaintiffs in the Underlying Actions seek to recover damages for alleged injuries resulting from exposure to elevated levels of formaldehyde. As a result, the underlying plaintiffs seek to recover damages for their alleged physical injuries in addition to a judgment requiring NACS to repair, remove, test for, and monitor formaldehyde in the temporary housing units.

**20.**

As set forth in paragraphs 13, the Total Pollution Exclusion clearly and unambiguously bars coverage for "bodily injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**21.**

Neither the "Building Heating Equipment" nor "Hostile Fire" exceptions to the Total Pollution exclusion apply to the allegations in the Underlying Actions.

**22.**

Additionally, the Total Pollution Exclusion clearly and unambiguously states that the insurance does not apply to any loss, cost, or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

**23.**

By virtue of the operation of the Total Pollution Exclusions in the Policies, the Policies do not provide coverage for the Underlying Lawsuits, and Northfield is not obliged to defend or indemnify NACS against the Underlying Lawsuits.

## SECOND CLAIM FOR DECLARATORY RELIEF
(The Punitive or Exemplary Damages Exclusion Precludes Coverage)

**24.**

Paragraphs 1 through 23 of this Complaint are hereby incorporated and made Paragraphs 1 through 23 of this Second Claim for Declaratory Relief.

**25.**

The insuring agreement set forth in paragraph 12 requires Northfield to defend and indemnify NACS only if the insurance applies.

**26.**

The underlying plaintiffs seek to recover punitive or other exemplary damages or fines from NACS.

**27.**

The Punitive or Exemplary Damages Exclusion in the Policies described in paragraph 16 clearly and unambiguously states that the insurance does not apply to "punitive or exemplary damages, fines, penalties or multiplied damages."

**28.**

By virtue of the operation of the Punitive or Exemplary Damages Exclusions in the Policies, the Policies do not provide coverage for any punitive or exemplary damages, fines, penalties, or multiplied damages sought by plaintiffs in the Underlying Lawsuits, and Northfield is not obliged to defend or indemnify NACS against the Underlying Lawsuits.

**WHEREFORE,** Northfield Insurance Company prays:

That after due proceedings, this Court award declaratory relief and enter a judgment in favor of Plaintiff, Northfield Insurance Company, and against Defendant, North American Catastrophe Services, Inc., declaring that, under the terms of the respective Policies, NACS is not entitled to defense or indemnification from Northfield for any damages NACS may incur as a result of the Underlying Lawsuits.

Respectfully Submitted:

_____
Scott P. Yount
Florida Bar No.: 0021352
Robert T. Vorhoff
Florida Bar No.: 0046880
GARRISON, YOUNT, FORTE
& MULCAHY, L.L.C.
423 S. Hyde Park Avenue
Tampa, Florida 33606
Phone: 813-275-0404
Fax: 813-275-0304
Email: syount@garrisonyount.com
Email: rvorhoff@garrisonyount.com
Attorneys for Northfield Insurance Company

OF COUNSEL:

LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
Ralph S. Hubbard III
Tina L. Kappen
601 Poydras Street, Ste. 2775
New Orleans, LA   70130-6017
Telephone: (504) 568-1990
Facsimile: (504) 310-9195